SECURITY MUTUAL LIFE INSURANCE COMPANY v. ABRAHAM L. MILLER, ADMINISTRATOR.

FILED DECEMBER 6, 1905.    No. 14,021.

1. **Insurance Policy:** VALIDITY. A life insurance policy issued on the life of a person but fourteen years of age, which policy had attached thereto a memorandum to the effect that the company issuing the policy would not assume any risk on account of the death of the insured until the insured had arrived at the age of fifteen years and is examined by an examiner of said company, and the examination approved by the medical director, is not void.

2. ———: WAIVER. In the case stated, where the company issuing the policy received and retained the second premium from the insured after he had arrived at the age of fifteen years, without requiring the medical examination as stated in the memorandum and provided for by its articles of incorporation, *held,* in the absence of fraud, that the medical examination was waived.

ERROR to the district court for Gage county: WILLIAM H. KELLIGAR, JUDGE. *Affirmed.*

*N. Z. Snell*, for plaintiff in error.

*A. D. McCandless* and *W. H. Ashby, contra.*

JACKSON, C.

The plaintiff in the trial court, as administrator of the estate of Samuel Earl Miller, deceased, recovered judgment against the defendant on a life insurance policy issued by the defendant to the deceased, and the case is brought to this court by a proceeding in error instituted by the defendant below.

The facts involved in the inquiry are that on the 31st day of May, 1901, the defendant issued and delivered to Samuel Earl Miller a policy of insurance in consideration of a note for the sum of $40.96, and the annual payment on the 31st day of May of each following year, for 19 years, of the sum of $40.96 as premiums. The policy provided for an indemnity in the sum of $2,000 in the event of the death of the insured, and contained the further provision that, in the event of total and permanent disability as a result of accident, the insured may elect to receive one-half of the face amount of the policy upon a surrender of the policy and a discharge from all further liability. At that time the insured was but 14 years of age, his fifteenth birthday occurred on the 8th day of May, 1902, and the application for the policy, which was in writing, correctly stated the age of the applicant. Attached to the policy at the time of its delivery was the following memorandum: "It is understood that the Security Mutual Life Insurance Company will not assume any risk on account of the death of the insured under this policy, until the insured arrives at the age of 15 years, and is examined by an examiner of said company, and the examination approved by the medical director of said company." By the articles of incorporation of the defendant it is provided: "The plan by which the business of this company shall be conducted is as follows: The application for membership

and for insurance or accident indemnity must be made in writing upon such forms as shall be prescribed by the board of directors, which application shall be passed upon by the board of directors or at least a majority of a committee appointed by them for that purpose. Each and every applicant shall submit to examination by the medical examiner, which must be passed on in writing by the medical director or his deputy." Below the signature of the insured upon the application for the policy is written: "We waive death risk until after examination at age of 15 years."

The insured died intestate on the 4th day of March, 1903, and had never taken the medical examination. At the trial it was admitted by the defendant that on the 8th day of May, 1902, and from that time to and including the 31st day of May, 1902, the insured was in good health, sound, well and strong, and that no demand was made upon him for a medical examination during that time, or at any other time, except as in the application and the slip or rider attached to the policy. Prior to the maturity of the premium due May 31, 1902, the defendant notified the insured of the date of the maturity of that premium. Upon receipt of the notice the insured transmitted to the defendant the following letter: "Oketo, Kans., April 19, 1902. W. A. Lindly, Sec. of Sec. Mut. L. Ins. Co.: Your notice received for policy No. 2462 on S. E. Miller. I don't think I will ever pay any more on it. I didn't like the way you done business come & take a policy before I had any chance to inquire of you & go & sell my note at once just as though it wouldn't be paid You must be hard up for money to do that kind of business. I havent tried to find out what you ar but I have always fealt they way you done you hant much of a Co. not very lasting so I think I better give you the one payment & quit before I get stuck for more I want in a Co I feel safe in. S. E. Miller, by A. L. Miller."

Upon receipt of this communication the defendant company wrote the insured as follows: "Lincoln, Nebr., April

23, 1902. Mr. A. L. Miller, Oketo, Kas. Dear Sir: We have your favor of the 19th and note what you say. It is our rule as well as the rule of all other companies to accept nothing but cash from agents in payment of the first premium on policies. Sometimes the agents take notes, and they either carry them themselves or dispose of them. If they are not able to carry them, it is necessary for them to sell them in order to pay the company. The object of this rule is to prevent agents from writing up a whole raft of people who are not responsible and sending the notes to the company that cannot be collected. There is no trouble in writing policies on people when they do not have to pay for them, and if we would accept any kind of a note, we would find ourselves doing a very large business, but we would also find that it was worthless. This policy of yours was written just before we increased our rates. We would charge you now for the same policy $50 a year. Still our rates are somewhat lower than most eastern companies. The policy which you hold is a saving to you of $9.04 a year, which in twenty years amounts to about $181, saying nothing about interest. This, taken into consideration with the fact that the death rate in this country is only sixty per cent. of the average death rate of the United States, should be a great inducement to keep this policy in force. In addition to the normal death rate, you have the advantage of a young company, made up mainly of young policy-holders, consequently, there will be naturally a low death rate for the next fifteen or twenty years. We can see no reason why this policy will not be very much more profitable to you than a policy in a large eastern company. If you desire any particulars of any kind, in regard to the business, we will be pleased to furnish them. We can assure you that the business is on a legitimate basis, and we are doing everything that we can to keep our expenses low. We are also very careful with our risks. Our aim is to have only first class risks on our books. Very truly yours, W. A. Lindley, Secretary."

This latter communication seems to have assured the

policy-holder.   At any rate the premium maturing May 31, 1902, was paid, and the receipt of that premium is acknowledged by the defendant.

Upon this state of facts, it is contended by the plaintiff in error: First, that the policy was void from its inception; and, second, that, if not void, it was never in force as a death risk by reason of the failure of the insured to take the medical examination.   The first contention involves a construction of the statute governing life insurance companies organized under the laws of this state, and of the contract itself as affected by that statute.   The statute provides as follows: "No corporation or association organized or operating under this act shall issue any certificate of membership or policy to any person under the age of fifteen years and over the age of sixty-five years, nor unless the beneficiary under said certificate shall be the husband, wife, relative, legal representative, heir or legatee of such insured member, nor shall any such certificate be assigned, and any certificate issued or assignment made in violation of this section shall be void."   Comp. St., ch. 43, sec. 76.   The writing of life insurance is not by this act made unlawful, the purpose of the law being to regulate and not prohibit.   The parties to the contract in suit contracted with reference to the statute, and by agreement postponed the operation of the policy until the assured should have arrived at the age of 15 years, when the statutory inhibition would not apply.   We think it was entirely competent for the parties to enter into such an agreement, and hold that the policy was not void under the statute. The delivery of the policy by the insurance company to the deceased was conditional that it should not go into effect until the assured had arrived at the age of 15 years and submitted to the physical examination required by the company's rules, and, waiving for the present the question of the physical examination, the policy would become operative and in full force when the insured did arrive at the age of 15.

This brings us to the question of the effect upon the con-

tract of the failure to have the physical examination made as contemplated by the parties at the time the contract was entered into. When the insured arrived at the age of 15 years, the defendant company had a right to insist, under the terms of its original agreement, that the insured should submit to an examination by their medical examiner as a condition precedent to the policy going into effect. In that respect it would seem that the case must stand or fall as though the insured at that time made application for the policy. There is no serious contention but that under such circumstances the company might waive the provision of its charter requiring the applicant to submit to the medical examination, and if the application had been made at that time, accompanied by the payment of the premium, and the policy unconditionally delivered to the assured without requiring the medical examination, such delivery on the part of the company would amount to a waiver. It appears from the facts disclosed at the trial that the deceased contemplated dropping the policy in suit before making the second payment, which would mature 23 days after he arrived at the age of 15 years, and so informed the company. Their letter to him of April 23 urgently soliciting him to continue the policy in force, and offering substantial reasons why he should do so, doubtless induced the payment of the second premium. When the second premium matured and was paid, the defendant company still had the right to insist upon medical examination. The acceptance of the premium at that time by the company, without requiring the assured to submit to an examination, in our judgment, amounted to a waiver of their right to do so, as much so as if the contract had been originally entered into at that date, especially in view of the fact that the premium was retained and no offer ever made to return the same to the assured during his lifetime.

There is no question of fraud involved; it is rather one of the legal effect of the acts of the parties performed in the utmost good faith. The failure of the defendant to

demand and of the insured to submit to the medical examination may have been an oversight of both parties. However, under the admitted facts, but one result could have followed from the examination. The condition of the health of the insured at that time was such as to have secured the approval of the defendant's medical examiner, and the company was in nowise prejudiced by the failure to have the examination made.

We recommend that the judgment of the district court be affirmed.

DUFFIE and ALBERT, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.